Robert J. Sexton, OSB # 226660
Email: joe@galandabroadman.com
**Galanda Broadman, PLLC**
8606 35th Avenue NE, Ste. L1
P.O. Box 15416
Seattle, WA 98115
Tel: 206-557-7509
Fax: 206-299-7690

Gabe S. Galanda (*pro hac vice* application pending)
Email: gabe@galandabroadman.com
Shelby R. Stoner (*pro hac vice* application pending)
Email: shelby@galandabroadman.com
**Galanda Broadman, PLLC**
8606 35th Avenue NE, Ste. L1
P.O. Box 15416
Seattle, WA 98115
Tel: 206-557-7509
Fax: 206-299-7690
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| THE ALLIANCE FOR TRIBAL CLEAN ENERGY, a 501(c)(3) nonprofit corporation; and CHÉRI SMITH, in her official and individual capacities,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>7SKYLINE, LLC, a limited liability company; JENNIFER ROUDA, in her official and individual capacities; and DAVID HARPER, in his official and individual capacities,<br><br>　　　　　　　　Defendants. | Case No. 3:24-cv-01818<br><br>**COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF**<br><br>Pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836; the Oregon Trade Secrets Act, O.R.S. § 646.461; and Oregon Common Law<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT - 1

## I.     INTRODUCTION AND NATURE OF CASE

1. This case arises out of the recent unlawful actions of Defendants 7Skyline, LLC, Jennifer Rouda, and David Harper in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; the Oregon Trade Secrets Act ("OTSA"), O.R.S. § 646.461, *et seq.*; and Oregon common law.

2. Plaintiffs Alliance for Tribal Clean Energy and its Founder, President, and Chief Executive Officer, Chéri Smith, seek injunctive and monetary relief pursuant to the laws of the United States and the State of Oregon, including but not limited to the DTSA, OTSA, and Oregon common law.

## II.     JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action for injunctive and declaratory relief pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1132 (diversity jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

4. The matter arises under the laws of the United States, including the DTSA, 18 U.S.C. § 1831, *et seq*.

5. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Plaintiffs are citizens of Washington, D.C., Delaware, and Rhode Island. On information and belief, Defendants are citizens of Oregon and Arizona.

7. The Court has personal jurisdiction over Defendants 7Skyline, LLC, Rouda, and Harper because, on information and belief, they are citizens and/or residents of Oregon, among other states, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Oregon.

COMPLAINT - 2

8. Venue is proper in the Portland Division of the U.S. District Court of Oregon under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) and Local Civil Rule 3-2 because Defendant 7Skyline, LLC's principal place of business is located in Multnomah County and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Multnomah County.

### III.     PARTIES

9. Plaintiff the Alliance for Tribal Clean Energy ("Alliance") is a 501(c)(3) nonprofit corporation incorporated under Delaware law with its principal place of business located in Washington, D.C.

10. Plaintiff Chéri Smith is the founder, President, and Chief Executive Officer ("CEO") of the Alliance and is a resident and citizen of Rhode Island.

11. On information and belief, Defendant 7Skyline, LLC is a limited liability company owned by members who are citizens of Oregon and Arizona with its principal place of business located in Portland, Oregon.

12. On information and belief, Defendant Jennifer Rouda is the Founder and Principal of 7Skyline, LLC and a resident and citizen of Oregon.

13. On information and belief, Defendant David Harper is the Executive Officer and Tribal Liaison of 7Skyline, LLC and a resident and/or citizen of Oregon and/or Arizona.

### IV.     FACTUAL BACKGROUND

**A.     A Summary of the Alliance and Its Valuable Trade Secrets**

14. The Alliance is a 501(c)(3) nonprofit corporation with a mission to support Native American Tribes in developing clean energy projects, such as solar, wind, and battery storage to reduce poverty and to mitigate the effects of climate change.

15. The Alliance was originally founded in 2016 as the Covenant Solar Initiative and was

previously known as the Indigenized Energy Initiative and the Indigenous Energy Initiative.

16. The Alliance is guided by a Native-led board and leadership team that includes experienced tribal government, business, cultural, and spiritual leaders.

17. Today, the Alliance offers free technical and financial assistance to Tribes, as well as capacity-building services and workforce support to advance Tribes' energy independence. The Alliance provides these services to Tribes through its four key "pillars," including technical assistance and project finance, energy policy and government relations, information resources and events, and education and workforce development.

18. Since its founding in 2016, the Alliance has compiled trade secrets, including without limitation: donor lists; donor names and contact information; arrangements with donors; internal Tribal engagement notes; details relating to the Alliance's relationships with donors and Tribal engagement partners, including without limitation compilations, programs, devices, methods, techniques, and process with regarding these relationships; and other highly confidential information (collectively, "Trade Secrets").

19. The Alliance's Trade Secrets constitutes a valuable asset of the Alliance, developed over a long period of time and at substantial expense to the Alliance.

20. The Alliance took reasonable measures to maintain the secrecy of these Trade Secrets, and the Alliance derives independent value from the Trade Secrets not being generally known to, and not readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the Trade Secrets.

21. The Alliance's Trade Secrets are used, among other things, to further its mission to provide Tribes with technical assistance and project finance.

**B.  Defendants Rouda's and Harper's Employment at the Alliance and Duty to Protect the Alliance's Trade Secrets and Other Obligations**

22. In May 2023, the Alliance extended to Defendant Harper an offer of employment with Harper to serve as the Head of Tribal Partnerships with a starting salary of $110,000 per year and with generous benefits. His compensation was increased to $125,000 in or around August 31, 2023. Defendant Harper knew or should have known that as a condition of employment with the Alliance, he was required to comply with his duty of loyalty to the Alliance and any other contractual or common law obligation to the organization. Defendant Harper accepted the Alliance's offer of employment by commencing work with the Alliance in or around May or June 2023.

23. In June 2023, the Alliance extended to Defendant Rouda an offer of employment to serve as the Head of Financial and Technical Assistance with a starting salary of $150,000 per year and with generous benefits. Defendant Rouda knew or should have known that as a condition of employment with the Alliance, she was required to comply with her duty of loyalty to the Alliance and any other contractual or common law obligation to the organization. Defendant Rouda accepted the Alliance's offer of employment by commencing work with the Alliance in June 2023.

24. During their employment with the Alliance, Defendants Rouda and Harper were entrusted with and had access to the Alliance's Trade Secrets and other confidential information, and these Defendants knew or should have known that, during the course of their employment and thereafter, they were obliged to keep those Trade Secrets and other confidential information secret and not disclose such information to third parties.

**C.  Defendants Rouda's and Harper's Resignations and Misappropriation of the Alliance's Trade Secrets and Other Unlawful Conduct**

25. In early 2024, the Alliance's CEO, Chéri Smith, became aware that Defendants Rouda and Harper were engaged in ongoing and escalating instances of self-dealing, conflicts of interest

in their personal affairs, and other professional misconduct.

26. On April 16, 2024, CEO Smith, Chief Financial Officer Cynthia Pacheco, and Human Resources representative Erica Tavarez met with Defendants Rouda and Harper to inform them that it was in all parties' best interests to end their employment relationship with the Alliance. A few days later, on April 19, 2024, Defendants Rouda and Harper resigned from the Alliance.

27. On information and belief, before and/or after their employment with the Alliance, Defendants Rouda and Harper breached their duty of loyalty and other contractual or common law obligations to the Alliance by acting for their own benefit (or other third parties' benefit) rather than the Alliance's benefit.

28. On information and belief, after Defendants Rouda and Harper departed from the Alliance, Defendants started misappropriating the Alliance's Trade Secrets in one or more of the following ways: deleting, copying, retaining, disclosing, making public, and/or using the Alliance's Trade Secrets and other confidential information, including by disclosing or using such information in connection with Defendants Rouda's and Harper's own business, 7Skyline, LLC, and by disclosing such information to Tribes and other third parties.

29. On information and belief, after Defendants Rouda and Harper departed from the Alliance, Defendants started intentionally interfering with the Alliance's agreements, arrangements, and economic relationships, actual or potential, with donors, Tribes, and/or other third parties with whom the Alliance has an agreement, arrangement, or economic relationship, actual or potential.

30. Likewise, after Defendants Rouda and Harper departed from the Alliance, they started making untrue, defamatory statements to third parties, including without limitation to donors, Tribes, other third parties, and/or their agents by falsely stating, among other things, that the

Alliance was engaged in purported financial mismanagement of donor and/or Tribal funds and that CEO Smith, a descendant of the Mi'Kmaq of Northern Maine and the Canadian Maritimes, is a "Pretendian" (i.e., "Pretend Indian") who has no Native ancestry or heritage.

31. Finally, on information and belief, after Defendants Rouda and Harper departed from the Alliance, they attempted to contact the Alliance's donors in writing and deliberately shared confidential donor information with Tribes and/or other third parties.

### D. Defendants' Actions Have Caused and Will Continue to Cause Irreparable Harm to Plaintiffs

32. As a result of Defendants' unlawful actions, the Alliance has suffered and will continue to suffer actual damages, including the loss of two separate grants: (1) a $1 million unrestricted grant for the Alliance's general operations and (2) a $400,000 unrestricted grant for a pooled fund of philanthropy for Tribal energy projects.

33. Likewise, as a result of Defendants' unlawful actions, CEO Smith has suffered harm to her reputation and standing in the relevant communities, including among donors, Tribes, the energy industry, and the environmental community, causing her emotional distress and harm, such as mental anguish, humiliation, loss of self-esteem, and dignity.

34. In addition, as a result of Defendants' unlawful actions, Defendants have been unjustly enriched in an amount to be determined at trial.

## V.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act**

*Against All Defendants*

35. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

36. The Alliance has compiled Trade Secrets, including without limitation: donor lists;

donor names and contact information; arrangements with donors; internal Tribal engagement notes; details relating to the Alliance's relationships with donors and Tribal engagement partners, including without limitation compilations, programs, devices, methods, techniques, and processes with regarding these relationships; and other highly confidential information that Defendants Rouda and Harper had access to during their employment with the Alliance.

37. The Alliance took reasonable measures to keep these Trade Secrets secret and the Alliance derives independent value from the Trade Secrets not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the Trade Secrets.

38. The Alliance's Trade Secrets are used, among other things, to further its mission to provide Tribes with technical assistance and project finance.

39. As former employees of the Alliance, Defendants Rouda and Harper were entrusted with and had access to the Alliance's Trade Secrets and other confidential information, and these Defendants knew that, during their employment and thereafter, they were obliged to keep those Trade Secrets and other confidential information secret and not disclose such information to third parties.

40. On information and belief, Defendants Rouda and Harper have misappropriated the Alliance's Trade Secrets in one or more of the following ways: deleting, copying, retaining, disclosing, making public, and/or using the Alliance's Trade Secrets and other confidential information, including by disclosing or using such information in connection with Defendants Rouda's and Harper's own business, 7Skyline, LLC, and by disclosing such information to Tribes and other third parties.

41. Notwithstanding their departure from the Alliance, Defendants have a continuing duty

to maintain the secrecy of the Alliance's Trade Secrets and not disclose that information to third parties or the public, including competitors of the Alliance or for Defendants' own enrichment. Defendants also have a continuing duty to return or otherwise destroy the Alliance's Trade Secrets.

42. Defendants took such actions willfully, maliciously, and/or in reckless disregard for the Alliance's rights, in that Defendants knew or had reason to know that they were not authorized to use or disclose the Alliance' Trade Secrets in competition with the Alliance or for Defendants' own financial benefit.

43. As a result of Defendants' misappropriation of the Alliance's Trade Secrets, the Alliance has suffered and will continue to suffer actual damages, and/or Defendants have been unjustly enriched in an amount to be determined at trial.

44. If Defendants' use of the Alliance's Trade Secrets is not enjoined, the Alliance will continue to suffer irreparable harm.

45. Pursuant to 18 U.S.C. § 1836(b)(3)(C), the Alliance is entitled to exemplary damages for Defendants' willful and malicious misappropriation of the Alliance's Trade Secrets.

46. Pursuant to 18 U.S.C. § 1836(b)(3)(D), the Alliance is entitled to recovery of its attorneys' fees because of Defendants' willful and malicious misappropriation of the Alliance's Trade Secrets.

## SECOND CLAIM FOR RELIEF

**Misappropriation of Trade Secrets under the Oregon Trade Secrets Act**

*Against All Defendants*

47. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

48. The Alliance has compiled Trade Secrets, including without limitation: donor lists, akin to a "customer list" within the meaning of O.R.S. § 646.461(4); donor names and contact

information; arrangements with donors; internal Tribal engagement notes; details relating to the Alliance's relationships with donors and Tribal engagement partners, including without limitation compilations, programs, devices, methods, techniques, and processes with regarding these relationships; and other highly confidential information that Defendants Rouda and Harper had access to during their employment with the Alliance.

49. The Alliance's Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public (or to other persons who can obtain economic value from its disclosure or use) and were subject of efforts that were reasonable under the circumstances to maintain their secrecy.

50. The Alliance has a protectable interest in its Trade Secrets, which are used, among other things, to further its mission to provide Tribes with technical assistance and project finance.

51. As former employees of the Alliance, Defendants Rouda and Harper were entrusted with and had access to the Alliance's Trade Secrets and other confidential information, and these Defendants knew that, during their employment and thereafter, they were obliged to keep those Trade Secrets and other confidential information secret and not disclose such information to third parties.

52. On information and belief, Defendants Rouda and Harper have misappropriated the Alliance's Trade Secrets in one or more of the following ways: deleting, copying, retaining, disclosing, making public, and/or using the Alliance's Trade Secrets and other confidential information, including by disclosing or using such information, without the Alliance's express or implied consent, for an improper purpose, such as using such information in connection with Defendants Rouda and Harper's own business, 7Skyline, LLC, and by disclosing such information to Tribes and other third parties.

53. Notwithstanding their departure from the Alliance, Defendants have a continuing duty to maintain the secrecy of the Alliance's Trade Secrets and not disclose that information to third parties or the public, including competitors of the Alliance or for Defendants' own enrichment. Defendants also have a continuing duty to return or otherwise destroy the Alliance's Trade Secrets.

54. Defendants took such actions willfully, maliciously, and/or in reckless disregard for the Alliance's rights, in that Defendants knew or had reason to know that they were not authorized to use or disclose the Alliance' Trade Secrets in competition with the Alliance or for Defendants' own financial benefit.

55. As a result of Defendants' misappropriation of the Alliance's Trade Secrets, the Alliance has suffered and will continue to suffer actual damages, and/or Defendants have been unjustly enriched in an amount to be determined at trial.

56. If Defendants' use of the Alliance's Trade Secrets is not enjoined, the Alliance will continue to suffer irreparable harm. *See* O.R.S. § 646.463(1).

57. Pursuant to O.R.S. § 646.465(3), the Alliance is entitled to punitive damages for Defendants' willful and malicious misappropriation of the Alliance's Trade Secrets.

58. Pursuant to O.R.S. § 646.467(3), the Alliance is entitled to recovery of its attorneys' fees because of Defendants' willful and malicious misappropriation of the Alliance's Trade Secrets.

## THIRD CLAIM FOR RELIEF

**Tortious Interference with Contract or Business Relationships**

*Against All Defendants*

59. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

60. Defendants, by engaging in the activities alleged herein and other activities, have

intentionally interfered with the Alliance's agreements, arrangements, and economic relationships, actual or potential, with donors, Tribes, and/or other third parties with whom the Alliance has an agreement, arrangement, or economic relationship, actual or potential.

61. Defendants Rouda and Harper knew of the existence of the Alliance's agreements, arrangements, and economic relationships with donors, Tribes, and/or other third parties, actual or prospective, through Defendants Rouda's and Harper's former employment with the Alliance.

62. At the time of Defendants' interference, the Alliance had economic or business relationships with donors, Tribes, and/or other third parties with the probability of future economic benefit to the Alliance, as demonstrated by the loss of at least $1.4 million in donor funding that would have been awarded to the Alliance, but for Defendants' unlawful interference.

63. Defendants' intentional interference with the Alliance's donors, Tribal engagement partners, and/or other third parties, actual or prospective, was for an improper purpose in that it was motivated by Defendants Rouda's and/or Harper's desire to have the Alliance's donors and/or Tribal engagement partners, actual or prospective, align with Defendants and others working in concert with Defendants, including other Tribes and/or third parties, rather than with the Alliance.

64. Defendants' interference with the Alliance's agreements, arrangements, and economic relationships with third parties was accomplished by improper means in that it was accomplished through Defendant Rouda's and Harper's former employment with the Alliance and breach of their duty of loyalty and other contractual or common law obligations to the Alliance.

65. As a result of such unlawful interference, the Alliance has suffered and will continue to suffer actual damages, and/or Defendants have been unjustly enriched in an amount to be determined at trial.

## **FOURTH CLAIM FOR RELIEF**

### Defamation Per Se

*Against Defendants Rouda and Harper*

66. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

67. Defendants Rouda and Harper made, untrue, defamatory statements to third parties, including without limitation to donors, Tribes, and/or other third parties, and/or their agents by falsely stating, among other things, that:

   a. The Alliance has committed financial mismanagement of donor and/or Tribal funds;

   b. CEO Smith is a "Pretendian" (i.e., a "Pretend Indian"); and/or

   c. CEO Smith does not have Native ancestry or heritage.

68. Defendants Rouda's and Harper's untrue, defamatory statement about the Alliance's purported financial mismanagement of donor and/or Tribal funds constitutes defamation per se because allegations of financial mismanagement, if true, would constitute a crime or immoral conduct.

69. In truth, the Alliance has not engaged in any type of financial mismanagement of donor and/or Tribal funds in the control, custody, or possession of the Alliance.

70. And in truth, CEO Smith descends through both of her parents from the Mi'kmaq of Northern Maine and the Canadian Maritimes, as well as from European ancestors, as truthfully stated in her publicly available profile on LinkedIn and other websites.

71. On information and belief, Defendant Rouda lacks any Native ancestry or heritage.

72. At the very least, Defendants Rouda and Harper did not adequately research these untrue, defamatory statements about the Alliance or CEO Smith before making them, despite the

Alliance's public financial filings and/or CEO Smith's publicly available biography on LinkedIn and other websites.

73. Defendants Rouda and Harper acted with malice or reckless disregard by willfully repeating these untrue, defamatory statements about the Alliance's purported financial mismanagement, as well as CEO Smith's purported ethnicity, race, or ancestry, to the Alliance's donors, Tribes, and/or other third parties or their agents.

74. As a result of Defendants Rouda's and Harper's defamatory statements, the Alliance has suffered and will continue to suffer actual damages, and CEO Smith has suffered harm to her reputation and standing in the relevant communities, including among donors, Tribes, the energy industry, and the environmental community, causing her emotional distress and harm, such as mental anguish, humiliation, loss of self-esteem, and dignity.

## FIFTH CLAIM FOR RELIEF

### Breach of Loyalty

*Against Defendants Rouda and Harper*

75. During their employment with the Alliance, Defendants Rouda and Harper held positions of trust and confidence and owed a duty of loyalty and other contractual or common law obligations to the Alliance, requiring that they act at all times in the Alliance's interest and not take actions materially detrimental to the Alliance.

76. Before and/or after their employment with the Alliance, Defendants Rouda and Harper breached their duty of loyalty and other contractual or common law obligations to the Alliance by acting for their own benefit rather than the Alliance's benefit by engaging in the following acts before and/or after their termination from employment with the Alliance, among others:

    a. On information and belief, using the Alliance's equipment and resources on behalf

      of themselves or their own business, 7Skyline, LLC, while employed by the Alliance;

b. On information and belief, deleting and/or copying the Alliance's donor lists with names and contact information, internal Tribal engagement notes, and other highly confidential documents of the Alliance, while employed by the Alliance;

c. On information and belief, soliciting or attempting to solicit the Alliance's donors, Tribal engagement partners, or other third parties with which the Alliance has an economic relationship, before and after Defendants Rouda and/or Harper were employed by the Alliance;

d. Soliciting or attempting to solicit the Alliance's then employees, consultants, or other personnel, before and/or after Defendants Rouda and Harper were employed by the Alliance; and

e. Without consent or authorization of the Alliance, retaining, disclosing, and/or using the Alliance's donor lists with names and contact information, internal Tribal engagement notes, and other highly confidential documents of the Alliance, before and/or after Defendants Rouda and Harper were employed by the Alliance.

77. As a result of Defendants' breach of their duty of loyalty or other contractual or common law obligation to the Alliance, the Alliance has suffered and will continue to suffer actual damages, and/or Defendants have been unjustly enriched in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment as follows:

78. A judgment in favor of Plaintiffs and against Defendants on all claims for relief asserted herein;

79. Preliminary and permanent injunctive relief that orders, enjoins, and restrains Defendants and all persons acting in concert or participation with Defendants as follows:

   a. Prohibits the use, disclosure, transmission, or continued possession for any purpose of the Alliance's Trade Secrets or confidential information;

   b. Compels the return to the Alliance, or destruction, of any and all records, information, and/or documents in any form, received or removed from the Alliance by Defendants, including all copies, within ten (10) days from the entry of the Court's order;

   c. Prohibits the interference with the Alliance's contracts and/or economic relationships, actual or prospective, with donors, Tribes, and/or other third parties;

   d. Prohibits the solicitation or contacting of the Alliances, donors, Tribal engagement partners, or other third parties with which the Alliance has an actual or prospective contract or economic relationship;

   e. Prohibits the publication, whether oral or in writing, of untrue statements about the Alliance and/or CEO Smith to donors, Tribes, and/or other third parties;

   f. Prohibits any further breach of the duty of loyalty or other contractual or common law duties owed to the Alliance; and

   g. Compels Defendants to immediately delete and remove all references to the Alliance for Tribal Clean Energy—including its name and logo—from any and all publications, materials, and online platforms within their possession, custody, or control. This includes, but is not limited to, company websites, biographies (including those of their employees or consultants solicited from the Alliance), social media profiles, posts (including those of their employees or consultants

solicited from the Alliance), and any other communication, whether public or private, that implies their or their company's connection to, or endorsement by, the Alliance.

80. An order requiring Defendants to account for all gains, profits, and advantages derived from misappropriation of the Alliance's Trade Secrets and confidential information;

81. An order requiring Defendants to disgorge all profits earned from their unlawful conduct;

82. An order awarding actual and compensatory damages according to proof at trial;

83. An order awarding exemplary and punitive damages to the extent allowed by law and in an amount according to proof;

84. An award of Plaintiffs' costs, attorney fees, and other expenses of this litigation; and

85. Such other relief to which the Alliance may be entitled and as the Court may deem necessary and proper.

DATED this 30th day of October, 2024.

Respectfully submitted,

**GALANDA BROADMAN, PLLC**

*/s/ R. Joseph Sexton*
Robert J. Sexton, OSB # 226660
joe@galandabroadman.com
Gabe S. Galanda (*pro hac vice* pending)
gabe@galandabroadman.com
Shelby R. Stoner (*pro hac vice* pending)
shelby@galandabroadman.com
P.O. Box 15416
Seattle, WA 98115
T: 206-557-7509
F: 206-299-7690

*Counsel for Plaintiffs*

COMPLAINT - 17